THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
LEVI Q. BLAKE, Defendant-Appellant.
Third District No. 3—89—0301

Opinion filed June 25, 1990.—Modified on denial of
rehearing August 8, 1990.

HEIPLE, P.J., dissenting.

Thomas A. Lilien, of State Appellate Defender's Office, of Elgin, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (Rita Kennedy Mertel, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:

The defendant, Levi Q. Blake, appeals from his conviction for armed robbery (Ill. Rev. Stat. 1987, ch. 38, pars. 18—1, 18—2).

At the defendant's first trial, the jury found the defendant guilty of home invasion, armed robbery and residential burglary. The trial court entered a judgment of conviction for home invasion. On appeal, this court reversed and remanded the cause for a new trial, finding that the trial court erred in refusing to give the defendant's tendered instruction on necessity. *People v. Blake* (1988), 168 Ill. App. 3d 581, 522 N.E.2d 822.

On retrial, the jury acquitted the defendant of home invasion and convicted him of armed robbery and residential burglary. The trial court entered judgment on the verdicts. Following denial of post-trial motions, the trial court vacated the judgment of conviction for residential burglary. The defendant was sentenced to 12 years in prison on the armed robbery conviction.

On appeal, the defendant contends his conviction must be reversed because the State failed to prove all the elements of armed robbery beyond a reasonable doubt. The facts are adequately set forth in the disposition of the defendant's first appeal, and only those facts necessary to reach our decision will be presented.

 █ Armed robbery is the taking of property from the person or presence of another by the use of force or by threatening the imminent use of force while armed with a deadly weapon. (Ill. Rev. Stat. 1987, ch. 38, pars. 18—1, 18—2.) To sustain a charge of armed robbery, it is essential that the robber use violence or fear of violence as the means to take property in the control of the victim. (*People v. Tiller* (1982), 94 Ill. 2d 303, 447 N.E.2d 174.) The presence requirement of the robbery statute relates to the property taken; it must have been in the presence or control of the victim. (*People v. Smith* (1980), 78 Ill. 2d 298, 399 N.E.2d 1289.) The test for "presence" is whether the victim's proximity or control over the property was so close that he could have prevented the taking if he had not been subjected to force or the threat of force by the robber. *People v. Braverman* (1930), 340 Ill. 525, 173 N.E. 55.

In the instant case, the defendant's conviction is premised on accountability for the actions of others. The defendant was charged with taking several items from the first floor of the house, including a television, microwave oven and a clock. However, it was the defendant's

coperpetrators, Anthony and Willie Dixon, who entered the home and held the victims in a second-floor bedroom. During the incident, the women were never on the first floor, from which the items of property were taken. At one point, the defendant went to the top of the stairs; however, it appears he was never in the presence of the Dixons and the victims. The State points to no threat or use of violence by the Dixons to force the victims to relinquish the property the defendant is charged with taking.

■ The cases cited by the State are all distinguishable from the facts in the instant case. The victims were never in the "presence" of the property that was taken, and there is no showing that the victims were forced to direct the Dixons to the property taken. We find no merit to the State's argument that the victims had control over the property on the first floor of the house. They were held upstairs throughout the entire incident. To find armed robbery based on the facts of this case, the robbery statute would have to be stretched beyond recognition.

In light of our disposition of the instant case, it is necessary that we address one of the defendant's alternative arguments. The defendant argues that he is entitled to a new trial because the trial court erred in failing to give additional instructions to the jury following an inquiry by the jury in the course of their deliberations.

■ At trial the defendant raised the affirmative defense of necessity and compulsion. The court gave the pattern jury instruction defining compulsion: "It is a defense to the charge made against the defendant that he acted under compulsion of threat or menace of the imminent infliction of death or great bodily harm, if he reasonably believed death or great bodily harm would be inflicted upon him if he did not perform the conduct with which he is charged." (Illinois Pattern Jury Instructions, Criminal, No. 24—25.21 (2d ed. 1981).) During deliberations the jury submitted the following question to the trial court: "Explain under the compulsion of threat. Expand on this, for the individual to be acting under compulsion, does the threat have to be continuous, or can it be a single or (one time) act[?]" The trial court responded that the instructions given the jury, when considered as a whole, were the complete set of instructions which should be given to the jury, and that it would be inappropriate for the trial court to further instruct the jury. The trial court found no gaps in the instructions given and ordered the jury to continue their deliberations.

On review, we find the trial court acted properly. The instructions given fully covered the issues to be decided by the jury. The presence and extent of compulsion were questions of fact to be determined by

the jury. No further clarification was necessary.

Therefore, the defendant's conviction for armed robbery is reversed and the cause remanded to the circuit court of Peoria County with directions to enter judgment on the residential burglary conviction and sentence accordingly.

Reversed and remanded with directions.

SCOTT, J., concurs.

PRESIDING JUSTICE HEIPLE, dissenting:

Defendant, Levi Quincy Blake, was charged with home invasion, armed robbery and residential burglary. Following a jury trial, defendant was acquitted of home invasion, but convicted of armed robbery and residential burglary. The trial court entered judgment only on the armed robbery conviction and sentenced defendant to 12 years' imprisonment. The majority opinion reverses the trial court's decision. I dissent.

In the early morning hours of February 1, 1987, defendant and two acquaintances, Anthony and Willie Dixon, entered the home of Mabel Schadt, age 77. Mrs. Schadt lived alone and, having recently undergone eye surgery, had a neighbor, Rosemary Maloney, who ate dinner with her and slept in the extra bedroom. Schadt and Maloney were asleep upstairs when the Dixons entered through a first-floor door. Initially, the unarmed defendant remained outside while the Dixons, armed with weapons, went upstairs and confronted the elderly occupants. Eventually defendant entered the home, remaining on the first floor, and helped the Dixons remove property, including a microwave, antique clock, television and stereo. Defendant alerted his coperpetrators when he realized the police were approaching, and upon their arrival, defendant hid in the third-floor attic, where he was discovered several hours later. Defendant was convicted on the basis of his accountability for the actions of the Dixons.

Illinois defines armed robbery as the taking of property from the person or presence of another by the use of force or by threatening the imminent use of force while armed with a deadly weapon. (Ill. Rev. Stat. 1987, ch. 38, pars. 18—1, 18—2.) Defendant maintains that the State failed to adequately establish the presence or threat of force requirements associated with armed robbery. The test for presence is whether the complainant's proximity to or control over the property was so close that she could have prevented the taking if not subjected to the use or threat of force. (*People v. Braverman* (1930),

340 Ill. 525.) The majority opines that because defendant removed only first-floor property and the victims were held on the second floor, the presence requirement was not met. Additionally, the majority holds that the State failed to show threat or use of violence by the Dixons to force Schadt and Maloney to relinquish the property. I disagree.

The Illinois Supreme Court has determined that the "requirement that there be a taking 'from the person or presence' is not *** limited to *** the immediate presence of the owner *** or custodian." (*People v. Smith* (1980), 78 Ill. 2d 298, 302.) This language was directly applied in a case wherein the victim upstairs heard a noise downstairs, went down to investigate and confronted defendants in another room. After defendants left, the victim discovered items missing from the downstairs room. Although the victim was not present in the room during the taking, the property was under his care and control. (*People v. Ortiz* (1987), 156 Ill. App. 3d 170.) This interpretation has also been used in similar situations, including a case where one defendant held the victim at gunpoint while his co-defendant took a television from a back room (*People v. Tiller* (1982), 94 Ill. 2d 303), and it applies in the instant case. Although the property may not have been taken before the victims' eyes, it was in their presence.

Additionally, the majority ascertains that the State failed to prove that threats or violence was used by the Dixons to force the victims to relinquish the property. While Illinois generally refuses to recognize initial force directed at another crime as sufficient for robbery when robbery is committed as an afterthought, such is not the case here. The record reveals nothing to support any conclusion other than that the Dixons entered the home with the intent to commit theft and their force toward the victims was to secure accomplishment of same. Accordingly, I dissent.